05-4470 -cr (L)
USA v. Kaid (Ahmed)

# UNITED STATES COURT OF APPEALS

## FOR THE SECOND CIRCUIT

_____

August Term, 2006

(Argued: August 8, 2007                         Decided: September 12, 2007)

Docket Nos. 05-4470-cr (L), 05-4481-cr (CON), 05-4685-cr (CON), 05-6993-cr (CON),
06-0229-cr (CON), 06-0537-cr (CON)

_____

UNITED STATES OF AMERICA,

*Appellee*,

– v. –

MOHAMED KAID, also known as Jimmy, also known as Mohamed Qayed, also known as
Mohamed Mosaid, ALI KAID, also known as Abdo Hussein, also known as Abdul, PAGE
MARTIN, MOHAMED ABUHAMRA, also known as Mike, ALI ABUHAMRA, also known
as Ali Mosed, also known as Ali Bailey, ABDO ALAWI, also known as Sam 2, also known as
Hamood, SALEH ABDULLAH, also known as Sam 1, HAMADA AWEDI, also known as
Mike, NADER HAMDAN, also known as Nick, HUSSAIN BERRO, also known as Sam,
HARRIS BARNETT, also known as Alex, FADI HAYDOUS, also known as Freddy,
MOHAMED ALMOZAHMI, also known as Red Fanny, RICHARD EMKE, KIRK SNYDER,
A.D. BEDELL COMPANY, INC., SHOAIB KAAID ALHAJAJI, also known as High Street
John, ALI AL-FIASALY, AHMED NASIR, also known as Shubwa, AHMED ALSHUBILI,
also known as Little Shubwa, MENAL MIKHA, SAM DANIEL, NABIL ABDULLAH,
MOHAMED ABDULLAH, MOHAMED ODEFA, also known as Ottifa, NAGIB AZIZ, also
known as Nico, KHALED ALJEMAN, also known as Speedo, ALI ABUHAMRA JR., also
known as Ali Mosed, also known as Ali Bailey,

*Defendants*,

AREF AHMED, RMZY ABDULLAH, AZZEAZ SALEH, MOHAMED ABUHAMRA, ALSO

KNOWN AS MIKE, NAGIB AZIZ,  ALSO KNOWN AS NICO,

*Defendants-Appellants.*

_____

Before: CALABRESI, RAGGI, and HALL, *Circuit Judges.*

Appeal from a final judgment of the United States District Court for the Western District of New York, convicting Defendants-Appellants of conspiracy to commit money laundering and trafficking in contraband cigarettes.  Plaintiff-Appellant Saleh argues that he was denied effective assistance of counsel in violation of his Sixth Amendment rights.[*]  The judgment of the district court is AFFIRMED.

> STEPHAN J. BACZYNSKI, Assistant United States Attorney, *for* Terrance P. Flynn, United States Attorney for the Western District of New York, Buffalo, N.Y., *for Appellee.*
>
> HERBERT L. GREENMAN, Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria LLP, Buffalo, N.Y., *for* Defendant-Appellant Aref Ahmed; THOMAS THEOPHILOS, Law Offices of John Pieri, Buffalo, N.Y., *for* Defendant-Appellant Rmzy Abdullah; JEREMY D. SCHWARTZ, Eoannou, Lana & D'Amico, Buffalo, N.Y., *for* Defendant-Appellant Azzeaz Saleh; JEREMY GUTMAN (Maria G. Giordano, *on the brief*), New York, N.Y. *for* Defendant-Appellant Mohamed Abuhamra; MICHAEL G. O'ROURKE, Buffalo, N.Y., *for* Defendant-Appellant Nagib Aziz.

_____

PER CURIAM:

On this appeal, we are asked to consider whether a defense attorney's purported twenty-minute absence from the courtroom during a testimonial phase of a criminal trial constitutes

---

[*] Defendants-Appellants raised a number of other issues which we have addressed in a summary order, also issued today.

ineffective assistance of counsel.

Preliminary to addressing this question, we note that the alleged trial absence of Matthew Pynn, counsel for defendant Azzeaz Saleh, is by no means clearly established. Certainly no such absence is noted anywhere in the trial record — not by the able district judge, not by the attorney involved, not by fellow defense attorneys, not by the prosecutor, and not by Saleh himself. The sole support for the claimed absence is an affirmation filed by Mr. Pynn two years after the event at issue in support of a motion to amend the record. Not surprisingly, by that time, although no other participant in the trial recalled counsel's alleged twenty-minute absence, neither could any participant categorically disprove the claim.[1] In these circumstances, the district court generously afforded Saleh the benefit of what must be deemed a rather large doubt about his trial lawyer's claimed absence and granted the motion to amend the record.

We are not convinced that an untested affirmation, filed two years after the events at issue, is sufficient, by itself, to require such a significant amendment to the trial record. Nevertheless, we sympathize with the trial judge's desire to avoid a lengthy evidentiary hearing — conceivably involving every person who was in the courtroom at the relevant time. Such a hearing would have been warranted because it is unlikely in the extreme that no one would have noted as extraordinary an event as the twenty-minute absence of defense counsel during a testimonial phase of the trial. Like the trial judge, however, we conclude that the alleged events,

---

[1] A law enforcement agent recalled that on one unspecified occasion, Mr. Pynn attracted attention when he "ran into the courtroom in a huff," but he recalled this late entry as being "only minutes after the Court resumed whatever session Mr. Pynn was late for." A district court might well conclude that an attorney's late arrival in court just as proceedings were resuming did not merit a specific notation on the trial record. We are extremely doubtful, however, that the trial judge in this case would have allowed a twenty-minute absence to go unnoted.

even as reported by Mr. Pynn, fail to demonstrate a violation of Saleh's Sixth Amendment rights.

In reaching this conclusion, we note that on February 12, 2004, in the midst of Appellant's trial for conspiracy to commit money laundering and trafficking in contraband cigarettes, the district court held an extensive hearing in the absence of the jury to determine whether prosecution witness Linda Mohawk had an independent basis to identify the defendants in front of the jury. Mr. Pynn was present for the entirety of this hearing and vigorously argued the identification issue on behalf of his client. The district court ultimately concluded that such an independent basis did exist and declined to preclude Ms. Mohawk's identification testimony. The next day, in the middle of Mohawk's direct testimony, the court recessed for lunch. The judge asked everyone to return at "quarter to two." In his belatedly filed affirmation, Pynn claimed that, "I mistakenly had quarter *after* two, or 2:15 P.M. in my mind. I appeared in the courtroom slightly prior to 2:15 PM to realize that the trial was in progress."

During Pynn's absence, the Government showed a number of brief video excerpts to the jury allegedly depicting Saleh and other defendants purchasing the contraband cigarettes. Mohawk testified at nine separate points that the video showed Saleh. Saleh contends that his attorney's absence at this critical stage of the trial constitutes *per se* ineffective assistance of counsel.

We review ineffective assistance of counsel claims *de novo*. *United States v. Couto*, 311 F.3d 179, 187 (2d Cir. 2002). As a rule,

> [t]o establish ineffective assistance of counsel . . . , [the defendant] must demonstrate (1) that his counsel's performance was deficient, and (2) "that the deficient performance prejudiced the defense." The first component "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." The second

-4-

requires "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Hemstreet v. Greiner*, 491 F.3d 84, 89 (2d Cir. 2007) (relying on *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984)) (internal citations omitted).

Saleh argues, however, that the above mentioned *Strickland* requirements, particularly the prejudice prong, are not necessary because his counsel's absence constituted *per se* ineffective assistance. We have found *per se* ineffective assistance when an attorney was not duly licensed to practice law, *see United States v. Novak*, 903 F.2d 883, 890 (2d Cir. 1990) (attorney fraudulently obtained his license); *Solina v. United States*, 709 F.2d 160, 167 (2d Cir. 1983) (attorney never admitted to the bar), and when an attorney was implicated in the defendant's crimes, *United States v. Cancilla*, 725 F.2d 867, 870 (2d Cir. 1984). However, we have been disinclined to expand further the conduct denominated *per se* ineffective. *See Bellamy v. Cogdell*, 974 F.2d 302, 303 (2d Cir. 1992) (*en banc*). For example, in *Tippins v. Walker*, 77 F.3d 682 (2d Cir. 1996), we were asked to deem *per se* ineffective a defense attorney who had slept through significant parts of a criminal trial. We found it unnecessary to decide the question of whether some instances of the sort might qualify as *per se* ineffectiveness, while at the same time reiterating our reluctance "to extend a rule of *per se* prejudice in any new direction," and observing that "[o]rdinarily, episodes of inattention or slumber are perfectly amenable to analysis under the *Strickland* prejudice test." *Id*. at 686.

Applying *Strickland*'s prejudice requirement to the particular facts at issue in *Tippins*, we said:

Although respondent argues that Tippins failed to carry his burden of adducing specific attorney errors resulting in prejudice, we understand Tippins' claim of

prejudice to be not that his lawyer should have taken any particular initiative that would potentially affect the result, but that, at critical times, Tippins had no counsel to sort out what initiatives were open. Under these circumstances, where the adversary nature of the proceeding was subject to repeated suspensions, there is little difference between saying that prejudice will be presumed and saying that prejudice has been demonstrated. We therefore conclude that Tippins suffered prejudice, by presumption or otherwise, if his counsel was repeatedly unconscious at trial for periods of time in which defendant's interests were at stake.

*Id*. at 687.[2] In this, the Court was guided by the "fundamental value that *Strickland* enjoins us to keep in mind": "'the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged. In every case the court should be concerned with whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.'" *Id*. (quoting *Strickland*, 466 U.S. at 696).

But just as *Tippins* concluded that discrete and minor instances of attorney sopor do not *necessarily* evidence such a breakdown, *id*. at 686, we reach that same conclusion with respect to the discrete and brief attorney absence asserted in this case. The alleged absence in the case before us was certainly unprofessional and likely objectively unreasonable, *see Strickland*, 466 U.S. at 687-88, but to demonstrate a violation of his Sixth Amendment rights, Saleh must still demonstrate some prejudice from his attorney's absence, whether specific, or—as in *Tippins*—general. Given Mr. Pynn's ability fully to challenge the legal admissibility of Ms. Mohawk's identification testimony on February 12, and his ability to test Mohawk's credibility through cross-examination on February 13, we conclude that Saleh cannot establish prejudice.

---

[2]  In *Tippins*, all trial participants agreed to the fact that defense counsel had slept intermittently throughout the trial, but the record did not permit easy identification of the precise times of slumber. *See Tippins*, 77 F.3d at 687-88.

His ineffective assistance of counsel claim thus fails, and the judgment of the district court is AFFIRMED.